No. 57.—JOHN S. BROOKS, plaintiff in error, *vs.* WILLIS SMITH, *et. al.* defendants in error.

Where the testimony seems to be equally balanced, a single witness deposing on each side, the Court will not grant a new trial, because the verdict is contrary to evidence. It is for the jury alone to decide upon the credibility of the witnesses.

Action on a promissory note, from Marion Superior Court. Tried before Judge WORRILL, September Term, 1856.

This action was brought by John S. Brooks, against Willis Smith and William Walker, upon the following note, to-wit:

"December 20, 1852.

($400 00) By the 25th day of December, 1853, we or either of us promise to pay J. S. Brooks or bearer, the sum of four hundred dollars, for value received.

WILLIS SMITH,<br>WM. WALKER."

The defendant pleaded that said note was given for the hire of a negro fellow named Monroe, a blacksmith, and his tools for the year 1853; that the agreement was, that if said negro died, defendant should only pay for the time he lived.

And defendant avers that said negro did die about the 1st of March, after he had been in his employ about two months, and that plaintiff then came and took away the tools. Defendant claimed that he was liable only for the time the negro lived, being about the one-sixth of the whole year.

Brief of evidence:

Plaintiff offered the note and rested his case.

Defendant examined, by interrogatories, *John B. Smith,* who testified that defendant hired the negro boy Monroe from Martin Brooks the latter part of the year 1852, and was to give four hundred dollars for him and his blacksmith tools; heard Martin Brooks tell defendant that if the negro's work stopped—if he got sick, or died, that his wages stopped. Negro died on the sixth day of March, 1853, and after his death, the blacksmith tools remained in Smith's possession until Brooks came and demanded them; witness assisted in putting up the tools, and Brooks engaged a man to get a wagon to take the tools home; was not present when the note was given, and does not know when or where it was given; he heard the contract between Smith and Brooks in relation to the hiring of the negro and tools.

*Cross Examined*—Did not know whether the contract was reduced to writing or not; Willis Smith, Martin Brooks, Nancy Smith and witness, and perhaps Abram Smith, were present at the hiring of the negro. Don't know whether defendant wrote to plaintiff to come and get the tools, or not; defendant had no use for them after the negro died; considered them of no value to defendant, and they were given up to Brooks.

Plaintiff in reply, swore:

*Martin Brooks,* who testified that he made the contract with defendant for the hire of the negro; that the note sued on was given for the hire; that the use of the tools was no part of the consideration; that the hire was absolute and unconditional; and there was no agreement or understanding

that the plaintiff was to lose any part of the hire if the negro died; witness wrote the note and made the contract.

*Cross Examined*—Was the son of the plaintiff, but had no interest in the event of this suit; never made any such contract as that testified to by John B. Smith, and never told him such was the contract; and Smith was not present when the contract was made. Defendant was to have the use of the tools upon condition that he kept them in good order, and return them when demanded in as good condition as when received: that the tools when returned were much abused and many of them were lost.

The jury found for the plaintiff the sum of seventy-two dollars and thirty-two cents, and cost of suit.

Plaintiff made a motion for a new trial, upon the following grounds:

1st. Because the verdict is contrary to evidence.

2d. Because the verdict is contrary to the weight of evidence.

3d. Because there is no evidence to support the verdict.

4th. Because the verdict is contrary to the charge of the Court.

5th. Because the verdict is contrary to law.

6th. Because no interest is allowed by the verdict on the amount found due.

The presiding Judge overruled the motion, and refused to grant a new trial.

Plaintiff excepted.

STUBBS & HILL, for plaintiff in error.

BLANFORD & CRAWFORD ; MILLER & HALL, for defendants in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This is the second time this case has been before this Court. At the first trial, the makers of the note pleaded:

1st. Failure of consideration. 2d. A breach of warranty by the owner, that the negro should live during the year for which he was hired. Upon motion, the Court struck out the defendant's pleas and refused to hear any evidence in support of them. That judgment was reversed and the cause remanded for a re-hearing. 18. *Ga. Rep.* 440.

A second trial has been had. The truth of the pleas was fully sustained by the testimony of John B. Smith, and denied by Martin Brooks, the son of the defendant. We do not consider the evidence of these witnesses necessarily irreconcilable. Be that as it may, it was entirely a question of fact for the jury, and they found a verdict apportioning the note, according to the time that the negro lived. A new trial was applied for and refused by the Court, and we think properly.

It is suggested by counsel for the plaintiff, that he lost his case on account of the unpopularity of the law, requiring the hirer to pay for the whole term for which a slave is hired, when he dies during the time. I hope he is mistaken. I am aware that hirers, who constitute a large class, especially in towns, cried out against the decision when it was made. This was natural. But when it was recollected what a large portion of the slaves hired out were the property of women and minor children, and how important it was to hold out to hirers a strong inducement to take care of the negroes entrusted to their care; that the owners, for the time being, lost all control over them; that the hirer became the temporary master in all respects; and that the slave must do his bidding, no matter how hazardous the service; that the same doctrine obtains in most of the slave States; and that it never has been questioned in England, that the tenant is bound for rent, notwithstanding the destruction of the tenement; the clamor subsided, and several sessions of the Legislature have since intervened without changing the law. It never should be. It is founded upon the principles of justice, as well as of humanity. If the hirer does not see fit to protect

himself by his contract, and take the negro for the year, why should the owner be considered as having insured his life for the year, and be held responsible for its continuance, when he gets nothing for the risk? I have no interest in this class of contracts, either individually or representatively; I have never doubted, however, for a moment the soundness and propriety of the decision.

Judgment affirmed.